# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRUCE R. CHAMPION,

        Petitioner,  :  Case No. 3:13-cv-315

  - vs -                      District Judge Thomas M. Rose
                                  Magistrate Judge Michael R. Merz

DEB TIMMERMAN-COOPER,
 Warden, London Correctional
 Institution,

                                      :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS;
## DECISION AND ORDER DENYING MOTION FOR ABEYANCE

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 4) to the Magistrate Judge's Report and Recommendations (Doc. No. 2) and also on Petitioner's Motion for Abeyance (Doc. No. 5). Judge Rose has recommitted the matter for reconsideration in light of the Objections (Doc. No. 6).

This case was brought *pro se* by Petitioner Bruce R. Champion to obtain relief from his conviction and consequent sentence in the Montgomery County Common Pleas Court in that court's Case No. 1997-CR-1509. The procedural history is recited in the original Report (Doc. No. 2).

The Report concluded that the judgment in this case became final on June 6, 2001, and that the one-year statute of limitations in 28 U.S.C. § 2244(d) therefore expired June 6, 2002. It therefore recommended the Petition be dismissed as untimely by eleven years.

In his Objections, Champion claims he can overcome the statute of limitations by a

1

showing of actual innocence, relying on *McQuiggin v. Perkins*, 569 U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013), and its predecessor in this Circuit, *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005). In *McQuiggin*, the Supreme Court held:

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin,* 133 S. Ct. at 1928.

Champion's actual innocence claim, as the Court understands it, is that he was convicted in part on the statement of co-defendant Lloyd Jackson to police that Champion was present at the scene of the crime and Jackson has recanted that statement. Champion asserts that Jackson's Affidavit "suggest[s] Petitioner did not play a part at all." (Objection, Doc. No. 4, PageID 38.)

The Second District Court of Appeals made the following findings of fact on direct appeal:

> According to the surviving victim, Beverly Williams, Champion and Jackson, both of whom were known to her, entered her residence on May 30, 1997. George Robinson was also in the residence at that time. After entering, Champion said, "I'm tired.

2

It's been a rough day. I need some money," pulled out a black revolver, and laid it on the table. Jackson, following Champion's instructions, taped Robinson's wrists and ankles.

Champion then told Jackson to tape Williams's hands. When Williams refused to cooperate, Champion picked up the gun and ordered her to turn around. Jackson taped Williams's mouth and wrists, but taped her wrists loosely. Champion mocked Jackson, asking him if he had learned how to tape in the Boy Scouts; then Champion re-taped Williams's hands more tightly.

While this was going on, Williams's phone rang, and Jackson answered the phone. Juan Crawford was calling to tell Williams he was on his way to her house. Jackson hung up the phone, and told Champion that Crawford would be coming over shortly. Champion handed Jackson the gun, and told him to get behind the door. When Crawford knocked, Jackson, whom Crawford knew, opened the door. Crawford saw the gun, Jackson, and Williams on the floor, with her mouth taped. He fled. He did not see Champion.

Champion then pulled the phone cord out of the wall, wrapped the cord around Williams's neck, and began to choke her. Since Williams was struggling, Champion took his gun back from Jackson. He continued choking Williams, and demanding money. When Williams finally told Champion that she had money in her bra, he tore her sweater to get the money. He also took her watch and ring, and then began choking her again with the phone cord. Despite the fact that Williams was able to get her fingers under the phone cord, Champion continued choking her until she passed out.

When Williams regained consciousness, she crawled to a neighbor's house, and police were notified. The police officers responding to the call found Robinson lying dead on the floor. Two spent .38 caliber bullets were found near the body. Additional .38 bullets and bullet fragments were retrieved during the autopsy. The cause of death was multiple gunshot wounds. Robinson had wounds to his leg, hands, abdomen and chest.

Williams identified Champion and Jackson, both of whom she knew previously, as the perpetrators. Crawford, who had previously known Jackson by sight but not by name, picked Jackson's photograph from a photo spread, without having had the opportunity to talk to Williams beforehand. Crawford was positive in his identification of Jackson as the man standing behind the door with the gun; he had had no opportunity to observe the other perpetrator.

3

> Champion and Jackson were apprehended in Kentucky, and charged in connection with these offenses. Champion was tried separately from Jackson. Specifically, Champion was indicted upon one count of Aggravated Burglary, two counts of Kidnapping, two counts of Aggravated Robbery, and one count of Aggravated Murder. At trial, a police officer was permitted to testify, over Champion's objection, that Jackson had admitted his presence at Williams's house at the time of the offense. A jury found Champion guilty of all counts, except the Aggravated Murder count, of which Champion was acquitted. The jury also found Champion guilty of firearm specifications with respect to all of the counts for which he was convicted. A judgment of conviction was entered upon the jury's verdict, and Champion was sentenced accordingly. From his conviction and sentence, Champion appeals.

*State v. Champion,* 1999 Ohio App. LEXIS 841, *2-5 (2nd Dist. Mar. 5, 1999).

Champion has not placed the Jackson affidavits[1] before this Court, so the Court only knows that what Champion claims they contain. If indeed they are a recantation of Jackson's statement to the police that Champion was present, then they are some evidence of actual innocence.

However, Jackson's recantation falls very far short of the sort of proof of actual innocence required by Supreme Court precedent. "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Jackson Affidavits are plainly not exculpatory scientific or critical physical evidence. They are from an eyewitness who was unavailable at trial because, as Champion through his counsel stipulated, Jackson would have invoked his Fifth Amendment privilege against self-incrimination had he been called to testify. That problem no longer exists for

---

[1] Both the Petition and the Second District Court of Appeals decision affirming denial of post-conviction relief refers to multiple affidavits without distinguishing what each of them says.

4

Jackson who is protected by Double Jeopardy from any new accusations on which the State has already tried him.

Jackson's claim that Beverly Williams' testimony was also false, at least in some respects, is not reliable. Williams testimony at trial as the surviving victim formed the principal basis for the findings of fact made by the court of appeals. Juan Crawford also testified and identified Jackson; although he could not identify Champion, he testified that there was a co-perpetrator. Williams knew both Jackson and Champion from before the crime, so her identification is not in doubt. And Champion does not suggest that Ms. Williams has repudiated her testimony.

As Champion notes in his Objections, delay in presenting new evidence of actual innocence is not of itself fatal to the claim, but is to be weighed in assessing its credibility. And Champion gives no explanation of why he waited more than eleven years to present that evidence in a habeas petition.

To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup* at 327. A jury would have to decide which of Jackson's statements was true. Even if a jury believed the recantation, it would still have to weigh Jackson's statements against the testimony of Williams and Crawford. It is very unlikely under those circumstances that no reasonable juror would have found Champion guilty.

**Motion for Abeyance**

Contemporaneous with his Objections, Champion filed a Motion for Abeyance (Doc. No. 5). He claims he wishes to "utilize a state court Supreme Court remedy to seek a delayed appeal

for his felony case" under Ohio Sup. Ct. R. Prac. 7.01(A)(4).  As reflected in the original Report, Champion apparently never appealed to the Ohio Supreme Court from the decision of the Second District Court of Appeals affirming his conviction on direct appeal.  Thus a motion for delayed appeal under the referenced Ohio Supreme Court rule is theoretically available to him. The United States Supreme Court has decided that district courts have authority to grant stays in habeas corpus cases to permit exhaustion of state court remedies in consideration of the AEDPA's preference for state court initial resolution of claims.  It cautioned, however,

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). . . .
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines v. Weber*, 544 U.S. 269, 277-278 (2005).

Since the Second District entered judgment on March 5, 1999, Champion's time for taking an appeal in the ordinary course expired forty-five days later, on April 19, 1999.  Ohio Sup. Ct. R. Prac. 7.01(A)(4)(i) requires the appellant to explain the delay, and Champion offers nothing here of that nature.  This Court has no basis to find good cause for the delay.

Champion also suggests that his state court sentence is void because of a failure to

6

impose a statutory term of post-release control, relying on *State v. Fischer*, 128 Ohio St. 3d 92 (2010). Champion misreads *Fischer*. Resentencing under Ohio law to properly impose post-release control does not restart the time for filing habeas corpus. *Mackey v. Warden*, 2013 U.S. App. LEXIS 9551 (6th Cir. May 9, 2013).

The Motion for Abeyance is DENIED.

**Conclusion**

Because Champion has not presented a credible actual innocence claim, it is again respectfully recommended that the Petition be dismissed with prejudice as barred by the statute of limitations. Decision of this case will not be stayed pending an Ohio Supreme Court decision on any motion for delayed appeal which Champion may file there.

Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 7, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).